# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br>v.<br><br>CHAUNCEY BOARDEN,<br><br>                 Defendant. | Case No. 14-CR-61-JPS<br><br><br>ORDER |

On March 11, 2014, a federal grand jury returned an eight-count indictment against Chauncey Boarden ("Boarden") and seven other defendants. (Docket #1). Boarden is charged in Count One of the indictment with conspiracy to distribute 100 grams or more of a mixture and substance containing heroin, in violation of Title 21 United States Code, Section 841(a)(1) and 841(b)(1)(B). Indictment at 1-2. Boarden entered a plea of not guilty on April 4, 2012. (Docket #47). The matter comes before the court on Boarden's motion for an evidentiary hearing and motion to suppress. (Docket #81). For the reasons explained below, Boarden's motion for an evidentiary hearing will be denied, but his motion to suppress will be granted.

1.     Events As Described in the Police Report

Milwaukee Police Officer Erik Maldonado ("Officer Maldonado") was on patrol on Thursday, October 3, 2013, along with Milwaukee Police Officer Decleene ("Officer Decleene"). At about one o'clock in the morning, the officers observed a silver Chrysler Town and Country Minivan traveling eastbound on West Atkinson Avenue; the officers followed the vehicle to conduct a DOT check of the license plate. Before the officers were able to conduct the check, the vehicle did a U-turn and parked. The driver, later

identified as Thomas Wilson ("Wilson"), exited the vehicle and dropped his cell phone. Officer Decleene called out to Wilson to tell him he dropped something; Wilson walked back, picked up his phone, and then walked toward an apartment complex. The officers then left the area and continued on their patrol.

About an hour later, at 2:19 a.m., the officers again observed the minivan, this time driving southbound on North Nineteenth Street. Due to the frequency of minivan thefts in the area, the officers pulled behind the vehicle. After the officers had begun following the minivan, but before the officers conducted a DOT check, Wilson pulled the vehicle over. Both Wilson and Boarden exited the vehicle. The officers exited the squad car and conducted a field interview of Wilson and Boarden. Officer Maldonado ordered Wilson and Boarden to re-enter the vehicle; Wilson and Boarden complied. Then, Officer Maldonado approached the vehicle. The driver's-side door was open and Wilson was seated in the driver's seat. As he approached the vehicle, Officer Maldonado observed a corner cut of a substance he believed to be cocaine; the corner cut was resting inside the driver's-side interior door handle compartment. Officer Maldonado ordered Wilson out of the vehicle and placed him under arrest.

Officer Decleene ordered Boarden to get out of the vehicle and to sit on the curb. Officer Decleene obtained Wilson's and Boarden's identifiable information, returned to the squad car, and conducted DOT checks. Officer Decleene wrote on an index card that Wilson had an investigative alert as a repeat gun offender; Officer Decleene showed the card to Officer Maldonado.

Officer Maldonado ordered Boarden to stand up, and placed Boarden in handcuffs to detain him while Officer Maldonado conducted a thorough search of the car for drugs. Officer Maldonado explains that he detained

Boarden because the search would require Officer Maldonado to walk past Boarden with his back to Boarden. Officer Maldonado conducted a pat down search of Boarden and felt what he believed to be drugs in the front pocket of Boarden's hooded sweatshirt. Officer Maldonado also smelled a strong odor of marijuana emanating from Boarden's person. Officer Maldonado firmly pressed against Boarden's pocket and retrieved a purple Crown Royal liquor sack. Inside the sack, Officer Maldonado found multiple corner cuts of a green leafy substance that later tested positive for THC, and a corner cut of a white chunky substance that later tested positive for cocaine base. Officer Maldonado placed Boarden under arrest.

Officer Maldonado then conducted a thorough search of the vehicle. He recovered a black backpack from the floor board of the vehicle, directly behind the center console. The backpack contained a firearm, along with paperwork from Waukesha County Technical College with Boarden's name written and typed on it. Officer Maldonado did not observe any identifiable information for anyone other than Boarden. Wilson and Boarden were conveyed to District #5 for processing.

2. Boarden's Motion for an Evidentiary Hearing

As the moving party, Boarden bears the burden of establishing that an evidentiary hearing is necessary. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995). Boarden requests an evidentiary hearing to determine the following issues:

1. Whether the police account of the stop of Boarden is credible.

2. Whether individual facts in this case, or the totality of those facts[,] support a finding of objectively reasonable suspicion that Boarden was committing, was about to commit or had committed a crime.

3. Whether the police had reasonable suspicion based upon articulable facts to justify the stop of Boarden in this case.

4. Whether the individual facts in this case, or the totality of those facts[,] support a finding of probable cause to support Boarden's arrest and probable cause to support the search of Boarden's person.

Motion (Docket #81) at 6-7. In his reply briefing, Boarden expands upon the first issue, disputing the credibility of statements from the police report that the police were investigating whether the minivan was stolen and that Boarden was arrested and searched for police protection. Reply (Docket #83) at 4-5. Boarden submits his own affidavit in support of his motion. (Docket #81-1). In his affidavit, Boarden avers that he had just exited a vehicle when he was stopped by Milwaukee Police Officers. Boarden Aff. at ¶ 2. Boarden further states:

> I was then ordered by Milwaukee Police Officers to re-enter the vehicle. I was ordered out of the vehicle. I was handcuffed and police officers conducted a pat-down of my person and police removed from my clothing a purple Crown Royal liquor sack. Police searched the contents of this sack.

Boarden Aff. at ¶ 3. In its response, the government argues that an evidentiary hearing is not warranted because Boarden has not identified any disputed facts that affect the outcome of the motion. Response (Docket #82) at 4.

The court can only agree with the government that Boarden has not shown an evidentiary hearing to be necessary. It is well-established that evidentiary hearings are warranted only when the defendant's allegations are definite, non-conjectural, and detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed

issues of material fact that will affect the outcome of the motion. *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir.1998). Evidentiary hearings on motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986) ("[A] trial court need only grant a suppression hearing when a defendant presents facts justifying relief, that is, facts which are definite, specific, detailed and nonconjectural.").

In this case, Boarden has not identified any disputed material facts. First, Boarden argues that the officer's statements regarding the minivan theft investigation and purpose of the pat down are not credible. Put another way, in claiming that the statement is not credible, Boarden simply questions the veracity of the statement. This fails to meet the standard of justifying an evidentiary hearing, which requires more than questioning the facts as presented; the standard requires definite, detailed allegations that show the facts to be in dispute. Similarly, Boarden's second, third, and fourth issues all question whether the facts of the case justify the officers' stop; however, Boarden does not dispute any of the facts as presented in the police report. The only facts Boarden puts before the court—the facts contained in Boarden's affidavit and quoted above—are entirely consistent with the facts as described in the police report. As the government rightly points out, these issues present argument on the conclusions of law, but do not call into question the facts as presented in the report. Response at 2. The court thus finds that Boarden did not meet his burden of proving an evidentiary hearing to be necessary in this case; the court accordingly denies Boarden's motion to that effect.

3.  Boarden's Motion to Suppress

Boarden next argues that the evidence obtained on October 3, 2013, should be suppressed because the officers stopped, arrested, and searched Boarden in violation of his Fourth Amendment rights. Motion at 1-2. First, a quick review of the pertinent facts as described in the police report. The first time the officers spotted the minivan, Wilson parked it, got out, and dropped his cell phone. When Officer Decleene told Wilson he dropped his phone, Wilson retrieved it and walked toward an apartment complex. About an hour later, at 2:19 a.m., the officers saw the same minivan again. They followed it, because minivans are frequently stolen in the district. After the officers started following the minivan, Wilson pulled the vehicle over, and both Wilson and Boarden exited the vehicle. Wilson dropped a set of keys as he exited. The officers stopped and exited their squad car. The officers then ordered Wilson and Boarden to re-enter the vehicle, and Wilson and Boarden complied.

The court first seeks to determine when, if ever, a stop occurred for purposes of the Fourth Amendment. The Fourth Amendment is not implicated by consensual encounters where citizens are free to walk away from the police. *United States v. Drayton*, 536 U.S. 194, 200 (2002); *United States v. Douglass*, 467 F.3d 621, 623 (7th Cir. 2006). It is only when an officer, by some show of authority, has restrained the liberty of a citizen that a seizure or stop has occurred. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (*quoting Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). The test for whether a citizen's liberty was so restrained is whether "a reasonable person would feel free to terminate the encounter." *Drayton*, 536 U.S. at 201. The court concludes that Wilson's pulling the car over did not constitute a stop for two reasons. First, there is nothing in the record to indicate that Wilson pulled over in response to any

show of police authority; the police report simply states that the officers pulled their squad car behind the vehicle but does not indicate that the officers engaged their sirens or lights to signal that Wilson must stop his vehicle. Instead, the record supports a finding that Wilson pulled off the road on his own free will. Second, there is nothing in the record to indicate that Wilson and Boarden did not feel free to leave at that point; indeed, the police report notes that they exited the vehicle, apparently went about their business, and only returned to the vehicle upon Officer Maldonado's order to do so. Thus, the court concludes that, at the point where both cars are simply stopped near each other on the side of the road, no Fourth Amendment stop had taken place. *See also United States v. Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003) (holding that no stop had taken place where the officer did not activate his squad car lights and the defendant driver pulled off the road on his own free will).

In this case, the Fourth Amendment was implicated shortly after both vehicles had stopped when the officers exited the squad car and ordered Wilson and Boarden to re-enter the minivan. At this point, the encounter was not just consensual and became a stop because Boarden was subject to "an officer's order accompanied by a show of authority, thus restraining his liberty." *Spiegel v. City of Chicago*, 106 F.3d 209, 211 (7th Cir. 1997) (*citing California v. Hodari D.*, 499 U.S. 621, 625 (1991)). Applying an objective standard, a reasonable person would not have felt free to leave under these circumstances. Officer Maldonado states that he "ordered" Wilson and Boarden to re-enter the minivan; had Boarden left, it would have been in direct violation of Officer Maldonado's order. Additionally, two facts underscore the show of authority in this situation. First, this was not a situation where officers on a foot patrol happened by some individuals and

briefly stopped them to ask some questions; instead, the officers here were in a squad car, began following a vehicle on the road, pulled the squad car over when the target vehicle pulled over, and exited the squad car to approach the vehicle's occupants. This was not a chance encounter but, instead, a situation where the police targeted certain individuals. Second, the officers did not merely ask Wilson and Boarden to pause and answer a few questions. Instead, they ordered Wilson and Boarden to change their course and to return to the minivan they had just exited. Given these facts, a reasonable person would not have felt free to leave, and the court therefore concludes that a stop occurred, implicating the Fourth Amendment.

Having determined when the stop occurred, the court can now assess the facts known to the officers at that time to determine whether the stop violated Boarden's Fourth Amendment rights. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that an officer may conduct an investigatory stop if the officer has a reasonable suspicion supported by articulable facts that "criminal activity may be afoot." 392 U.S. 1, 30. The government bears the burden of establishing reasonable suspicion by a preponderance of the evidence. *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013).

The government maintains that the officers had reasonable suspicion for this stop, offering three facts in support: first, that minivans are frequently stolen in District Five[1]; second, that the officers had observed Wilson exit his minivan and drop his phone about one hour prior; and third, that the officers

---

[1] Boarden argues that the court cannot consider the government's citation to the Milwaukee District Five website, which indicates that the top two stolen vehicles in the district are minivans. Response at 5 n.3; Reply at 7-8. The court need not determine whether judicial notice of this fact is appropriate in this case, *see* Fed. R. Evid. 201, because the court concludes that the stop does not pass constitutional muster, even taking the fact as true.

had just observed Wilson exit the minivan and drop his keys. Response at 5. These facts are not sufficient to support a reasonable suspicion that criminal activity may be afoot. First, as Boarden points out, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Reply at 2 (*quoting Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Similarly, simply driving a model of car that is frequently stolen, while a factor relevant to a *Terry* analysis, *see Adams v. Williams*, 407 U.S. 143, 144 (1972), is not sufficient to support suspicion that a person is committing a crime. Boarden rightly points out that there was no report of a stolen minivan matching the van's description, nor any report of a minivan theft at all. Reply at 6. Without more, the bare fact of driving a minivan is not a sufficient basis to justify a stop. The only other facts the government cites in its response—that the officers observed Wilson drop a phone in the first encounter and then drop his keys in the second encounter—simply do not carry the requisite gravitas to support a finding of a reasonable suspicion that a crime is afoot. Police can sometimes consider innocent behavior in determining whether reasonable suspicion exists. *Terry*, 392 U.S. at 22-23. An officer may even make inferences from these behaviors, but those inferences only support reasonable suspicion to the extent that they are rational. *Id.* at 30. In this case, the court is unable to conclude that driving a type of vehicle that is frequently stolen and twice dropping something while exiting the vehicle supports a rational inference of criminal activity. The facts of this case do not support a finding of reasonable suspicion and, as a consequence, the defendant's motion to suppress must, therefore, be granted.

Application of the exclusionary rule in this case requires suppression of all evidence obtained against Boarden on the date in question, as described

in the police report and summarized above. The exclusionary rule is a judicially-created remedy that prohibits the introduction of evidence, if that evidence was obtained through violations of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). The test for determining whether evidence was obtained through a Fourth Amendment violation is whether the evidence was the result of exploiting the illegality, or whether the evidence was the result of "means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). In this instance, discovery of the evidence in question was the result of exploiting the illegal stop. The drugs recovered from the minivan and from Borden's person, and the firearm recovered from the car, are the result of searches that took place immediately after the illegal stop. The causal chain from the constitutional violation to the evidence is immediate and unbroken. The government argues that the officers had probable cause to arrest Wilson, based upon the officers' observation of the corner cut of cocaine resting in plain view in the driver's side door. Response at 5. However, it is "an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990). In this instance, the officers effected an unconstitutional stop and then approached the vehicle; the officers were in a position to view the corner cut only after they stopped Wilson and Boarden and ordered them to re-enter the minivan. Thus, the officers' earlier unconstitutional actions negated any probable cause that might have otherwise justified Wilson's arrest, the subsequent searches, and Boarden's arrest.

      For the foregoing reasons, the court will grant Boarden's motion to suppress.

Accordingly,

IT IS ORDERED that Defendant's motion for an evidentiary hearing (Docket #81) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that Defendant's motion to suppress (Docket #81) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 26th day of June, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge