# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAUNCEY BOARDEN,<br><br>Defendant. | Case No. 14-CR-61-3-JPS<br><br>**ORDER** |

**1.    BACKGROUND**

On October 20, 2020, Defendant filed a motion for compassionate release. (Docket #296). Federal Defender Services ("FDS") informed the Court that it would be filing a supplement on behalf of Defendant, (Docket #298), however, on December 7, 2020, FDS filed a motion requesting that the Court appoint counsel to represent Defendant, (Docket #304). The Court ordered that the Government respond before the Court would act on FDS's motion to appoint counsel. (Docket #312). The Government filed a response, (Docket #314), and FDS filed a reply on Defendant's behalf, (Docket #318). The Court has reviewed these submissions and will deny Defendant's motion for compassionate release.

**2.    FACTS**

In 2014, Defendant pleaded guilty to one count of conspiracy to distribute heroin. (Docket #101). From at least 2010 through 2013, Defendant was involved in a drug trafficking organization that bought and sold large amounts of heroin in the Milwaukee area. (Docket #159 at 5–10). The organization (and Defendant, specifically) began selling to confidential informants; search warrants were eventually issued and arrests were made.

(*Id.*) When Defendant was arrested during a traffic stop, police found him in possession of more than 100 bindles of heroin set for distribution and a loaded 9mm pistol. (*Id.*) While Defendant was not the leader of the organization, the Government considered him a higher-level participant. (Docket #314 at 11). On December 5, 2014, Defendant received a below-guideline sentence of 111 months in prison, to be followed by a five-year term of supervised release. (Docket #48 at 2–6). He is scheduled for release on or about November 8, 2022. (Docket #203).

Defendant's criminal history is extensive—enough so that he was classified as a career offender under the guidelines, with a criminal history category of VI. (Docket #159 at 24). His adult convictions include the following: operating a vehicle without consent; manufacturing/delivering cocaine; fleeing/eluding an officer; obstructing an officer; robbery with threat of force; and possession of narcotics. (*Id.* at 15–22). During his incarceration, he has had multiple disciplinary incidents, including possession of unauthorized items, introducing drugs/alcohol, and stealing food. (Docket #314-1).

Defendant is a 37-year-old male. (Docket #159 at 4). His medical records indicate that he suffers from thyroid cancer, high blood pressure, and morbid obesity, with a BMI around 40. (Docket #318 at 1). At the time he submitted his motion, Defendant asserted that he was awaiting a thyroidectomy, but it seems he has since received this surgery. (Docket #314 at 9). It further appears that he is receiving treatment for his high blood pressure, as well as counseling about controlling his weight issues. (*Id.*) He is also about to undergo radioactive iodine therapy. (Docket #318 at 1–2). This treatment will likely require frequent visits to outside hospitals, including transportation and a two-man escort; such visits may also have

to be rescheduled given the regular lockdowns and quarantines of pandemic-era incarceration. (*Id.* at 6).

Defendant is currently detained at Federal Correctional Institution Oxford ("FCI Oxford") in Oxford, Wisconsin. As of April 26, 2021, FCI Oxford reports that zero inmates and zero staff members have active cases of COVID-19.[1] No deaths have been reported, and 673 inmates and 75 staff have recovered from the virus.[2] Further, FCI Oxford is reporting that 63 of its staff and 133 of its inmates have been *fully* vaccinated.[3] In October 2020, Defendant tested positive for COVID-19. (Docket #314 at 8). He remained asymptomatic and has since recovered. (*Id.*)

**3.   LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180

---

[1] Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Apr. 26, 2021).

[2] *Id.*

[3] *Id.*

(7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

**4.     ANALYSIS**

First, the Government concedes that Defendant exhausted his administrative remedies. (Docket #314 at 6); *see Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether Defendant has an extraordinary and compelling reason warranting his release.

The outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). Here, Defendant suffers from multiple conditions which, according to the Centers for

Disease Control and Prevention, may increase one's risk for severe illness from COVID-19. These conditions include cancer, high blood pressure, and severe obesity.[4]

However, the Court has been informed by probation that, while Defendant's vaccination status is unknown, FCI Oxford is vaccinating its inmates in waives. Proof of this vaccination plan is evident on the BOP's website, which shows that 63 of its staff and 133 of its inmates have been fully vaccinated[5]. "[F]ederal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk." *United States v. Sims*, No. 90-80492, 2021 WL 872218, at *3 (E.D. Mich. Mar. 9, 2021) (determining that a defendant with obesity, type 2 diabetes, and chronic kidney disease who had already recovered from COVID-19 had not presented an extraordinary and compelling reason warranting his release); *see also United States v. Collins*, No. 17-20360, 2021 WL 869651, at *5 (E.D. Mich. Mar. 8, 2021) ("The available medical records do not indicate that [the defendant] has himself been vaccinated, but federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk."); *United States v. McKay*, No. 1:18-CR-00339-PAC-7, 2021 WL 807108, at *4 (S.D.N.Y. Mar. 3, 2021) ("Moreover, the BOP has begun vaccinating both inmates and staff . . . . And with the BOP committed to vaccinating all prisoners during the upcoming months, . . . [defendant] will eventually receive the vaccine . . . [likely] more

---

[4]Ctrs. for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), *Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 26, 2021).

[5]Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Apr. 26, 2021).

quickly in prison than outside of it.") (internal quotation and citation omitted).

Still though, the seriousness of Defendant's thyroid cancer, along with the complications involved with his need to travel to receive radioactive iodine therapy while the COVID-19 pandemic continues, may allow the Court to find that Defendant has presented an extraordinary and compelling reason warranting his release. But the Court need not reach a decision. Even if Defendant had an extraordinary and compelling reason, the Court must still consider whether he is a danger to any other person or the community, pursuant to § 3142(g), and whether the § 3553(a) factors militate against his release.

When Defendant was arrested, he was in possession of a loaded firearm and a large number of pre-weighed packages of heroin. Defendant and his codefendants were part of a large and long-term criminal organization that brought significant amounts of drugs into the Milwaukee area. And this was just the most recent criminal activity in Defendant's extensive history. His list of convictions spans well over a decade and includes both violent and nonviolent offenses. Further, some of his bad behavior has continued into his sentence, resulting in multiple BOP disciplinary infractions.

Defendant was charged and convicted as a result of his ongoing and cavalier criminal activity. Although he has served approximately 80% of his sentence, the Section 3553(a) factors, including the need for just punishment, deterrence, and protection of the public, weigh heavily in favor of requiring Defendant to serve the entirety of his sentence. The Court will deny Defendant's motion for compassionate release.

5.  **CONCLUSION**

Defendant has exhausted his administrative remedies, and he may have proffered an extraordinary and compelling reason warranting his release. However, the § 3553(a) factors strongly militate against his release. Therefore, the Court will deny Defendant's motion for compassionate release, (Docket #296). The Court will also deny Defendant's motion to appoint counsel, (Docket #304), as moot. Further, the Court will grant the parties' motions to seal, (Docket #315, #319).

Accordingly,

**IT IS ORDERED** that Defendant Chauncey Boarden's motion for compassionate release (Docket #296) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Chauncey Boarden's motion to appoint counsel (Docket #304) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the parties' motions to seal (Docket #315, #319) be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge